Donnelly vs. Decker and others.

*October 4 — November 20, 1883.*

CONSTITUTIONAL LAW: DRAINAGE ACTS. *(1) Drainage acts valid under police power. (2) Discretion as to line of drain. (3) Evidence: certified copies.*

1. Ch. 54, R. S. (providing for the construction of ditches or drains for the purpose of draining marsh, swamp, or overflowed lands, when, in the judgment of the town supervisors, they are "demanded by or will conduce to the public health or welfare," and providing for the payment of the damages sustained by the owners of the lands across which they are constructed, and that the *whole cost* of such construction, including such damages, shall be assessed upon the lands directly benefited thereby), is valid, not as an exercise of the power of eminent domain, but as an exercise of the *police power* of the state. [TAYLOR, J., is of the opinion that the act should be upheld as an exercise of the power of eminent domain.]

2. The supervisors in laying out such ditch or drain may, in their discretion, make any suitable variation from the line proposed in the petition, provided they do not so far depart therefrom as to make materially another and different line.

3. A *certified copy* of the certificate of assessment by the supervisors of the cost of construction of such ditch or drain (under sec. 1364, R. S.) is admissible in evidence under secs. 4148-49, R. S.

| 58 | 461 |
| 74 | 626 |
| 58 | 461 |
| 86 | 141 |
| 58 | 461 |
| 89 | 515 |
| 58 | 461 |
| 90 | 106 |
| 90 | 304 |
| 58 | 461 |
| 60 LRA 187n | |
| 58 | 461 |
| 117 | 366 |

APPEAL from the Circuit Court for *Waushara* County.

The complaint alleges that the defendants wrongfully entered upon the lands of the plaintiff situated in the town of Warren, Waushara county, described as follows: The N. E. ¼ of the S. W. ¼ of sec. 11, town 18, range 12, and there committed trespass by digging a ditch on said land and destroying cranberry vines, to his damage $200. The answer, besides a general denial, alleges that the place in question where the alleged trespass is charged to have been committed is a town ditch or drain lawfully laid out and constructed by the authority and direction of the supervisors of said town

of Warren; that three of the defendants were and are the supervisors of said town, and that the other defendants were acting under the orders and direction of said supervisors; and that they did nothing in the digging and construction of said ditch but what they lawfully might do. It is further alleged that the town of Warren, and not the plaintiff, is the owner of the premises.

Certified copies of the various papers in the proceedings for the construction of the drain were introduced in evidence at the trial. The petition was as follows:

" *To the Supervisors of the Town of Warren, County of · Waushara, State of Wisconsin:* We, the undersigned, freeholders and residents of the town of Warren aforesaid, do hereby make application to you to enlarge the ditch known as the Main Ditch, running through or across sections 11 and 10 of said town, to the following dimensions, to wit: Eight feet wide at the top, six feet wide at the bottom, and an average depth of twenty inches. Commencing at a point thirty rods south of N. E. corner of the N. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of sec. 11 of said town, owned by Wm. Covill, running thence west through the above-described land to a point forty rods south of N. E. corner of the N. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of sec. No. 11, owned by *Thos. Donnelly*, thence west through said land to a point forty-five rods south of the N. E. corner of the N. W. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ of sec. No. 11, owned by Rivers & Co., running thence west through said land to the west line of sec. No. 11, running thence S. W. across S. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of sec. 10, owned by J. Finnerty.

"[Signatures.]"

Exhibit D., which was a certified copy of the certificate of the assessment by the supervisors of the cost of construction, etc., and which shows the line of the ditch as actually laid out and constructed, was as follows:

" Whereas, we the supervisors of the town of Warren in the county of Waushara did by an order duly made bearing

date on the 19th day of July, 1881, lay out and establish an enlargement of a ditch as follows:

"Commencing at a point thirty-two rods south of the N. E. corner of the N. W. quarter of the S. E. quarter of section number 11, running thence south, sixty-two degrees west, twenty-five rods; thence north, seventy-two degrees west, fifty-two rods; thence south, seventy-five degrees west, 273 rods; thence south sixty-four rods to line between sections 10 and 15 to a point ninety-four rods west of corners of sections 10, 11, 14 and 15, which proposed enlargement of ditch is to pass through the tracts of land hereinafter described, names of resident owners of each said tract being set opposite the same:

"N. W. ¼ S. E. ¼ sec. 11— Wm. Covill.

"N. E. ¼ S. W. ¼ sec. 11— *Thomas Donnelly.*

"N. W. ¼ S. W. ¼ sec. 11— Rivers & Co.

"N. E. ¼ S. E. ¼ sec. 10— S. S. Putnam.

"S. ½ S. E. ¼ sec. 10 — Jno. Finnerty.

"Now we do hereby certify that we have ascertained the total cost of the construction of said enlargement of ditch to be the sum of $162.80; that we have apportioned the cost of said enlargement of ditch," etc.

A jury trial was waived. The court found, as facts: '(1) that the plaintiff was the owner and in the actual occupation of the land at the time of the alleged trespass; (2) that the defendants, as alleged in the complaint, wrongfully and without authority of law, entered upon the said close of the plaintiff and cut a ditch through a portion of the same; (3) that plaintiff sustained damage by said wrongful acts of the defendants in the sum of $20; (4) that all the material allegations of the complaint are true; and, as conclusion of law, that the plaintiff is entitled to judgment for $20 and costs. From a judgment accordingly the defendants appealed.

For the appellants there was a brief signed by *Jackson & Thompson*, of counsel, and oral argument by *Mr. Thompson.*

They argued, *inter alia,* that it is in the power of the legislature to pass a valid ditch or drain law, and that it has been the practice of all states to legislate on this subject. *Seely v. Sebastian,* 4 Or., 29; *Hatch v. Pottawattamie Co.,* 43 Iowa, 442; Cooley's Con. Lim., 510 *et seq.; Thompson v. Treasurer of Wood Co.,* 11 Ohio St., 678; 41 N. J. Law, 489; 66 Ind., 168; 8 Or., 67; 30 Ohio St., 590; 43 Iowa, 477; 76 N. C., 297; 114 Mass., 483; 118 id., 168; 52 Ind., 178; 47 id., 114; 70 N. C., 634; 42 Ind., 390; 20 Ohio St., 349; 32 Ind., 169; 52 Barb., 137; 18 N. J. Eq., 518.    This authority of the legislature is referable to the police power. Cooley on Taxation, 396, 402; *O'Reiley v. K. V. Draining Co.,* 32 Ind., 169; *Reeves v. Treasurer of Wood Co.,* 8 Ohio St., 333; *Palmer v. Stumph,* 29 Ind., 329; *State v. Newark,* 27 N. J. Law, 189; *Sessions v. Crunkilton,* 20 Ohio St., 349; 27 N. J. Law, 194; 11 La. Ann., 220; 18 N. J. Eq., 68; *Goddard, Petitioner,* 16 Pick., 504.

*Geo. D. Waring,* for the respondent.

ORTON, J.   This is an action of trespass for digging a ditch through the plaintiff's land, and the defendants justified as supervisors of the town, and as acting under their authority and by their employment, under ch. 54 of the Revised Statutes, which provides for making ditches or drains through swamp and overflowed lands.    The plaintiff obtained a judgment, and the findings of the circuit court ignore entirely the matter of justification, on the ground, as it is said by the learned counsel of the respondent, that the provisions of said chapter are in conflict with the constitution of this state in not requiring just compensation to be made for private property taken for such public use, and in violating the rule of uniformity of taxation.  Another point is made on the argument in this court that the proceedings of the supervisors did not conform to the provisions of said chapter.

Donnelly vs. Decker and others.

The ground upon which the circuit court ruled against the defense will first be considered. There is so much conflict and confusion of authorities upon this question, confined to a law of this character and relating to what are supposed to be cognate or analogous objects, that it would be fruitless and profitless to review such authorities, or attempt to reconcile them, or even to make them specially applicable to this case. Most of them relate to street or sidewalk improvements, or sewers in connection with streets, in all of which cases there is a clear and unquestioned *public use*. This identical question is new in this court. Very many cases have been decided here relating to the opening, grading, or improvement of streets, changing the waters of rivers in connection with the same, and to the building of sidewalks and similar works of internal improvement, which are evidently for the *public use*, and, of course, fall under the above provisions of the constitution. In respect to benefits to be assessed, it has finally been decided and followed that such benefits must be *actual* and not constructive or arbitrary; and that an assessment which is in excess of such benefits falls within the rule of the constitution as taxation, or, in other words, actual benefits are assessments proper for local improvements, the power over which existed in the legislature, antecedent to the adoption of the constitution, as an inherent municipal power, and to that extent is not affected by the constitution; but all in excess of such actual benefits is a general or public tax, to be borne by the people of the district according to the constitutional rule of uniformity. *Johnson v. Milwaukee*, 40 Wis., 315; *Weeks v. Milwaukee*, 10 Wis., 242; *Fire Dep't of Milwaukee v. Helfenstein*, 16 Wis., 137.

There may have been decisions of this court in agreement with the decisions of the state of New York, that, so far as such burdens are local and special, such assessments do not fall within the rule of uniformity, as in *Bond v. Kenosha*,

17 Wis., 288, and other cases.  In respect to such improvements it may be that the owner of the land may be paid his compensation in actual benefits, as in *Holton v. Milwaukee*, 31 Wis., 42.  But the view we take of this case renders it unnecessary to examine further the decisions of this court relating to the taking of private property for public use, and to the rule of uniformity in taxation.  Sec. 1359 [ch. 54, R. S.] provides for an application by six or more freeholders of the town in which such marsh, swamp, or overflowed lands are situated, one of whom shall be the owner of the land through which the ditch is proposed to be laid, to lay out and establish such ditch or drain, etc., " if, in their judgment, such ditch, drain, or enlargement *is demanded by or will conduce to the public health or welfare.*"  Sec. 1361 provides for a meeting of the supervisors for such purpose upon proper notice to all parties interested.  Sec. 1362 provides for their decision of the question upon personal examination of the ground.  Sec. 1362 provides that they shall decide and establish the route of the ditch and its width, and make a survey and map, and file them with the town clerk; and it also provides for an appeal to a justice of the peace, and the subsequent proceedings thereon.  Sec. 1363 provides for dividing such drain into sections, to be kept in repair by certain contiguous land-owners, whose lands are drained.  Sec. 1364 provides for apportioning *the whole cost* upon the several tracts of land benefited in proportion to the benefits to be respectively derived from such ditching.  This is as far as the provisions need to be noticed, to raise the question involved in the case, except that provision is made for ascertaining damages to any land-owner, and that such damage shall be paid out of the town treasury.

It is obvious, at first blush, that this law cannot be sustained as providing for a work for the public use.  *First,* there is no provision whatever for *compensation* to the owner for his lands actually taken; *second,* the tax or assessment,

or whatever it may be called, beyond the actual benefits, is arbitrary, and according to the rule of uniformity is unequal, as it ought to be borne by all citizens of the town alike; because, beyond the actual benefits, any other person in the town receives a corresponding benefit, and is justly liable to bear his proportion of such tax. Historically, such laws, with even more stringent provisions against the owners of the lands to be drained or reclaimed by the ditching, exist in many of the states, and in some have existed from an early day, and they have generally been upheld. If such an improvement is really for the public use and benefit, then it must fall within the principles of *eminent domain* and *taxation*, and on this theory the law cannot be sustained. Such drainage laws have sometimes been treated as being within those principles, and have been condemned because they provide for taxation beyond actual benefits upon an arbitrary and unequal basis, as in *Tidewater Co. v. Coster*, 18 N. J. Eq., 518, and that no certain *compensation* is provided for the land-owner whose lands are actually taken. *Cottrill v. Myrick*, 12 Me., 222; *Matter of Canal Street*, 11 Wend., 154, and many other cases, are cited in the opinion in that case showing that taxation beyond actual benefits would render the act void. See, also, *Lee v. Ruggles*, 62 Ill., 428. It is too clear for argument that this law cannot be sustained, if it come within the doctrine of those and similar cases, where it is held that private property is taken for public use under the power of eminent domain, and that the excess of the assessment is *taxation*. This same principle has been established in numerous cases in this court. *Robbins v. M. & H. R. R. Co.*, 6 Wis., 636; *Powers v. Bears*, 12 Wis., 214; *Kennedy v. M. & St. P. R'y Co.*, 22 Wis., 582; *Snyder v. W. U. R. R. Co.*, 25 Wis., 60; *Sherman v. M., L. S. & W. R. R. Co.*, 40 Wis., 652; *Rusch v. M., L. S. & W. R'y Co.*, 54 Wis., 138; *Lumsden v. Milwaukee*, 8 Wis., 488; *Seifert v. Brooks*, 34 Wis., 444.

It requires but a casual examination of these provisions for the draining of the swamp and overflowed lands of the state to be apparent that such ditching and draining are for no public use whatever in the legal meaning of the term. The primary object is solely to restore such lands to a proper condition for tillage and agriculture by the several owners, and for their use alone. It enhances their value, intrinsic and in market. This is the only object which concerns their use, and that use is strictly private. The other object, and the only one mentioned in the law, is that such ditching, draining, and enlargement of drains will "conduce to the public health or welfare." It is clear that no private property is authorized by this law to be taken for the *public* use, and that whatever taxation so called or assessment, is not an exaction of the government for revenue or for any public purpose. It follows that this system of drainage of the lands of private owners by special assessment of all of them proportionably according to their respective *private* benefits, is not within the purview of any provision of the state constitution, and it cannot be sustained thereby. But there is a sovereign power in the state, to be exercised by the legislature, which is outside, and in a sense above, the constitution, called the *police* power of the state. Chief Justice Shaw, in *Comm. v. Alger*, 7 Cush., 53, gives as good a definition of this high and comprehensive power as any which can be found: "All property in this commonwealth is held subject to those general regulations which are necessary to the common good and general welfare."

Chief Justice Redfield, in *Thorpe. v. R. & B. R. R. Co.*, 27 Vt., 140, says: "The police power of the state extends to the protection of the lives, limbs, *health*, comfort, and quiet of all persons, and the protection of all property within the state." By it "persons are subjected to all kinds of *restraints* and *burdens*, in order to secure the general

comfort, *health*, and prosperity of the state;" according to the maxim, " *sic utere tuo ut alienum non lædas.*" This legislation may readily be referred to this power by providing for the *public health*. If it were not for this obvious and clearly expressed purpose of the law, it could not be endured for a moment, because it would provide for a despotic and most unwarrantable interference with private property for strictly *private purposes* and *use*, in which neither the people of the state nor the state itself, nor the public, have any interest whatever. If these lands are to be reclaimed by some work or method of improvement which might be used by the public, such as a *canal* for carrying purposes, then the combination of the two objects of reclaiming the lands, and making such facility of transportation, would bring the enterprise within the principles of eminent domain and taxation.

In *State v. City Council of Charleston*, 12 Rich., 702, it is said: "Statutes of drains and sewers were known before the time of Henry VIII., when the general statutes on the subject were enacted, and the mode of assessment prescribed. In like manner the act of 1764 provided for assessments for drains or sewers, and sidewalks. Various reasons have been assigned for these exceptions. Among others, it has been plainly urged that as a *sanitary* regulation, and under the power to *abate nuisances*, the corporation might require every citizen to drain his own lot," etc. In *State v. Newark*, 27 N. J. Law, 185, it is said: "Laws for the drainage and embanking of low grounds, and to provide for the expense, for the mere benefit of the proprietors, without reference to the *public good*, are to be classed, not under the *taxing*, but the *police* power of the government."

Judge COOLEY, who is not liable to be wrong on such questions, has so well expressed the constitutional bearings of such drainage laws that I cannot forbear from quoting somewhat largely from his two great works on Taxation and

Constitutional Limitations: "Similar considerations apply in the case of drainage laws, which are enacted in order to relieve swamps, marshes, and other low lands of the excessive waters which detract from their value for occupation and cultivation, and perhaps render them worthless for use, and are likely at the same time *to diffuse through the neighborhood a dangerous nuisance.* If these may be drained at the expense of the owner by special tax, there can be no doubt of the right of the state to make it his duty to drain them *as a matter of police regulation,* the state coming forward to perform the duty at his expense in case of its not being suitably or expeditiously performed." The learned author cites many cases in which this interference of the state is justified under the taxing power, and many cases in which such laws are pronounced unconstitutional, resting on the power of eminent domain and taxation. In these various respects only can there be said to be a great conflict of authority. Indeed, it seems marvelous that any court should ever attempt to justify such laws, which are purely and essentially for private purposes confined to the owners of the lands drained and improved, under the power to condemn and requiring compensation, and to tax for public purposes, or even to make an assessment of actual benefits, as in the case of streets and sidewalks, which are confessedly for public use.

" *Taxation* for the benefit of individuals " is compared by Chief Justice LOWRIE, in *Phil. Association v. Wood,* 39 Pa. St., 73, "to monopolies." The various objects of legislation falling within the police power of the state are numerous, and need not be mentioned, but, by all authority, the public health and the prevention or abatement of nuisances are indisputably within it. Cooley on Taxation, 402 *et seq.,* and notes. The distinction upon which rests the right of legislation in such cases, under the doctrine of eminent domain and the state power of taxation, is whether

the objects are *publici juris* or *privati juris*.   Cooley's Con.
Lim., 577, note.   To compel the owners of lands to make,
embankments thereon to restrain the overflow of navigable
rivers, may, in a sense, partake of the nature of a work for
the public use, and in such cases the rules of uniformity in
taxation and compensation for the land taken may well ap-
ply.   But even in such case the police power has often been
invoked to justify such works, and especially the duty re-
quired by law for each abutting owner to keep up the de-
fenses against inundation.   Cooley's Con. Lim., 733.   A
by-law requiring the owner to remove the snow from the
walk adjacent to his own premises, though liable to operate
unequally as a public burthen, is justified under the police
authority of the city.   *Goddard, Petitioner, etc.*, 16 Pick.,
504.

   In *O'Reiley v. Kankakee Val. Draining Co.*, 32 Ind., 169,
the law conferring upon a private company the power and
duty to drain the swamp and overflowed lands, and afford-
ing great profits, which are assessed on the owners of such
lands to the extent of the cost and expenses proportionably,
was sustained under the *police power* on the ground of the
public health and prevention of nuisance.   It is said in the
note to sec. 573, 2 Dillon on Mun. Corp.: "In order to jus-
tify an assessment, the improvement must be for a *public
purpose*, since the public have no right to tax a citizen to
make improvements for his *own benefit solely.*"   *Bradley v. N.
Y. & N. H. R. R. Co.*, 21 Conn., 305.   In sec. 141 of the same
work the learned author says, in respect to the police power
and laws made thereunder: "And it is well settled that laws
and regulations of this character, though they may disturb
the enjoyment of individual rights, are not unconstitutional,
though no provision is made for compensation for such dis-
turbances.   They do not appropriate private property for
public use, but simply regulate its use and enjoyment by the
owner."   "He owns it subject to this restriction, namely,

that it must be so used as not to injure others, and that the sovereign authority may by *police* regulations so direct the use of it that it shall not prove pernicious to his neighbors, or the citizens generally. These regulations rest upon the maxim, *salus populi suprema lex.*" "It is not a taking of private property for public use, but a salutary restraint on a noxious use by the owner, contrary to the maxim, *sic utere,* etc."

It may be that such legislation, merely to protect the public health and prevent a public nuisance, would not be sustained to place the whole burthen of drainage upon the owners of such lands, irrespective of special private benefits to each one, by reclaiming his lands and making them more valuable for use and enjoyment. This question we need not decide in this case, for both objects concur in this act. To protect the public health and prevent public nuisances, this legislative interference with private property may be justified, and the assessment to cover the cost of such works may properly be made on the lands proportionably benefited and improved thereby. This would not take such legislation from the police power and refer it to the power of making improvements for the public use, but it would be sustained solely by the *police* power, and the doctrine of just compensation and uniform taxation would have no constitutional application. *Woodruff v. Fisher*, 17 Barb., 224; *Williams v. Mayor of Detroit*, 2 Mich., 560; *Cone v. Hartford*, 28 Conn., 363.

A similar law for drainage of swamp lands in the various towns was sustained against all constitutional objections of eminent domain and taxation, under another power expressed in the constitution of the state of Ohio, that the town trustees could enter upon such a system of drainage "when the same is demanded by or will be conducive to the *public health*, convenience, or welfare.", *Sessions v. Crunkilton*, 20 Ohio St., 349. The court said in the opinion: "The

question is made whether the uses and purposes named in the statute are within the meaning of 'public welfare' as used in the constitution. We have no doubt that both public health and convenience are embraced in 'public welfare.' That this statute may be used (and probably is, sometimes) for the purpose of promoting private interests in the name of 'public *health* and *convenience*,' we need not stop to deny. It is enough for us to know that the principal object intended and authorized by the legislature was the *public welfare;* and that whenever private interests are promoted by the making of ditches, etc., they are merely incidental, when the statute is properly executed." In *Reeves v. Treasurer of Wood Co.*, 8 Ohio St., 333, it is held that taxation, in the meaning of the constitution, was not involved in such drainage laws, and that private property is not taken for public use; and *Hill v. Higden*, 5 Ohio St., 243, holds that even assessments for street improvements on those benefited, for the entire cost, proportionably, would not be unconstitutional.

It would seem to be most reasonable that the owner of the lands drained and reclaimed should be assessed to the full extent, at least, of his special benefits, for he has received an exact equivalent and a full pecuniary consideration therefor, and for that which is in excess of such benefits, should be paid on the ground that it was his duty to remove such an obvious cause of malarial disease and prevent a public nuisance. The duty of one owner of such lands is the duty of all, and in order to effectually enter upon and carry out any feasible system of drainage through the infected district, all such owners may be properly grouped together to bear the general assessment for the entire cost proportionably. Assessment in similar cases is not taxation. *State v. Newark*, 27 N. J. Law, 185. A law equally stringent and quite similar was sustained by the supreme court of Oregon. 4 Or., 25. It was claimed that it was unconstitutional on similar grounds; and the court said: "We think there is nothing in

this point." " Suppose a large marsh is situated in such a manner that the miasma arising therefrom affects the *public health* of a large number of people. To provide for its drainage would be a matter of public concern and could be regulated by law." In our sister state of Iowa a law of similar and equally objectionable provisions has been sustained, and the court cites Cooley's Constitutional Limitations and Dillon on Municipal Corporations, in which such laws are sustained by the police power of the state, and to which we have already referred.

In *Thompson v. Treasurer of Wood Co.*, 11 Ohio St., 678, the Ohio law of drainage is sustained solely by the police power to protect the public health. In *O'Reiley v. Kankakee Draining Co.*, *supra*, this question was very fully examined in the light of the authorities, and the stringent drainage law of that state was sustained on the ground that it came within the police power of the state over the public health and public nuisances. See, also, *Hartwell v. Armstrong*, 19 Barb., 166; *People v. Mayor, etc., of Brooklyn*, 4 N. Y., 419; *Egyptian Levee Co. v. Hardin*, 27 Mo., 495. This last case is in support of a drainage law of stringent provisions; as also *Ex parte New Orleans Draining Co.*, 11 La. Ann., 338; *Palmer v. Stumph*, 29 Ind., 329; *Anderson v. Kerns Draining Co.*, 14 Ind., 199.

The statutes of Massachusetts and Connecticut, for the drainage of meadows, swamp and low lands, are very similar to ours, but more stringent against the land-owner. The statute of the latter state provides that the other owners shall pay the assessment for those unable to do so, and take their chances of such reimbursement from the product of their lands. Such laws have been uniformly upheld in those states under the police power. *Booth v. Woodbury*, 32 Conn., 128; *State v. Sargent*, 45 Conn., 373; *Austin v. Murray*, 16 Pick., 126; *Bancroft v. Cambridge*, 126 Mass., 438; *Dingley v. Boston*, 100 Mass., 544.

In many and perhaps most of the states such laws exist, and when brought before the courts have been sustained when justified by the police power; but in some cases they have been held unconstitutional when rested upon the provisions of the constitution of eminent domain and taxation. The only public object and purpose of our statute is to promote the public health and welfare. Within this evident province of legislation the legislature must be presumed to have acted within it, unless in the name and by the pretext of the police power and police regulations the rights of persons and property should be wrongfully invaded. But in the various provisions of this law it is not observable how any law could be made more just and efficient to effect the objects proposed. In a late case in the circuit court of the United States such a law was sustained under the police power. *Shelly v. St. Charles Co.* (Mo.), 16 Chi. Leg. News, 36 [*S. C.*, 17 Fed. Rep., 909].

Our conclusion is, therefore, that these provisions are not unconstitutional.

The remaining question is whether these provisions in this instance were complied with. There is no finding whatever of the facts of the defense, and only a general conclusion that the defendants wrongfully and without authority of law entered upon the close of the plaintiff and cut a ditch through a portion of it. The learned judge who tried the cause found the law unconstitutional, and of course found that no proceedings under it afforded any justification for the trespass, and therefore omitted to find that the law, as such, had or had not been complied with. It is questionable whether such a finding, or rather in the absence of all finding of the facts constituting the defense, and a mere finding of the trespass, this court ought to look into the evidence to determine questions which were not considered by the circuit court, or in any findings made thereon. We may say, however, in respect to the introduction of the proceedings

of the supervisors in relation to the ditching in question, we can find in the printed case only one objection to any of such proceedings, and that is to the certified copy of the order marked Exhibit D, which is a determination of the damages and compensation for benefits allowed and apportioned, on the ground that the original order, and not a certified copy of it, should have been introduced. Such copy was admissible under sec. 4148 and 4149, R. S. The objection that the ditch varied materially from the line fixed in the petition is disposed of in *Neis v. Franzen*, 18 Wis., 537. The supervisors had the right to make any suitable variation from such line, in their discretion, so that they did not so far depart from the line in the petition as to be materially another and different line. The statute seems to have been substantially complied with, and the admissibility of evidence is not material, the case having been tried by the court. The conclusion is that the provisions of the drainage law are constitutional and valid, and that the defendants complied substantially therewith in entering upon the plaintiff's land and digging a ditch through a portion thereof.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment for the defendants.

CASSODAY, J. I concur in the result of the decision, but am not prepared to give my assent to all that is said in the opinion of my brother ORTON.

TAYLOR, J. I fully concur in the judgment of this court reversing the judgment of the circuit court in this case, but cannot concur in many of the reasons given for such reversal in the opinion filed by the court. My opinion is that the law concerning the opening of ditches and drains, under which the proceedings brought in question in this action were had, must be upheld as an exercise of the power of eminent do-

main, and not as an exercise of the police power of the state; and, as an exercise of that power, it is not, in my opinion, unconstitutional because it provides that the costs of opening such ditches or drains, including the damages awarded to the owners of the lands taken, shall be assessed upon the lands benefited by the opening of such ditches, etc. Without here citing the cases in this court, and in numerous other courts, sustaining such assessments, it is evident to me that such an assessment can be lawfully made without violating any constitutional provision, and that to hold otherwise is to overrule several decisions of this court, and render void as unconstitutional numerous acts of the legislature regulating the manner of taking land and making compensation therefor, and for making public improvements in the cities and villages of this state, which have thus far been held as valid and constitutional laws. Holding such opinion, I deem it my duty not to silently acquiesce in the opinion filed by the court herein.