THE STATE EX REL. BALTZELL vs. STEWART, Circuit Judge, etc.

*October 2 — October 15, 1889.*

DRAINAGE: CONSTITUTIONAL LAW. *(1) General or special law. (2) Granting corporate powers: Police power. (3) Determination of necessity of work. (4) Fixing limits of district. (5) Due process of law.*

1. Ch. 383, Laws of 1889, providing for the drainage and reclamation of certain lands in Dane county, is a special law.

2. Although said act provides for the appointment of a board of drainage commissioners with certain corporate powers for the carrying out of the proposed system of drainage, yet as the commissioners are to exercise under it a police power for the promotion of the public health and welfare, and that is the main purpose of the act, it does not contravene subd. 7, sec. 31, art. IV, Const., which prohibits the legislature from enacting any special or private law granting corporate powers or privileges except to cities.

3. The fact that the decision of the commissioners that the public health and welfare will be promoted by the proposed work is made final and conclusive upon that question, does not render the act invalid.

4. The lands to be drained being in Dane county, and the nature and extent of the proposed drainage being clearly indicated in the act, it is no objection to its validity that the commissioners are to determine what lands shall be drained and what lands shall be charged with assessments for doing the work.

5. An appeal to the courts from the decisions of the commissioners being given by the act, as to all material questions except the necessity of the proposed drainage, it cannot be said that property rights will be affected without due process of law.

CERTIORARI to the Judge of the Ninth Judicial Circuit.

Pursuant to ch. 383, Laws of 1889, George E. Bryant and others presented to said judge their petition for the appointment of drainage commissioners. Objections to such appointment were filed by James Robbins and John R. Baltzell, the relator, the owners of the dam and water power at the outlet of Lake Mendota, and by the Stoughton Milling Co. After a hearing the court made an order appointing the commissioners, and to review such order a writ of *certiorari* was sued out.

*S. U. Pinney* and *A. L. Sanborn*, for the relator, contended, *inter alia*, that the act of 1889 is a special one granting corporate powers and privileges, and as such is prohibited by sec. 31, art. IV, Const. That it is a special law, see *State ex rel. Cothren v. Lean*, 9 Wis. 285, 295-6; *Clark v. Janesville*, 10 id. 177,.181, 191-4; *Evans v. Phillippi*, 117 Pa. St. 237; *McCarthy v. Comm.* 110 id. 246; *State ex rel. Att'y Gen. v. Cincinnati*, 20 Ohio St. 18; *School Dist. v. Ins. Co.* 103 U. S. 707; *Clegg v. School Dist.* 8 Neb. 178; *People ex rel. Klokke v. Wright*, 70 Ill. 389, 399; *Wheeler v. Philadelphia*, 77 Pa. St. 350; *Scranton v. Silkman*, 113 id. 191, 199; *Davis v. Clark*, 106 id. 377, 384; *Morrison v. Bachert*, 112 id. 328-330; *Scowden's Appeal*, 96 id. 422, 425; *Comm. ex rel. Fertig v. Patton*, 88 id. 258. The prohibition applies as well against granting corporate powers or privileges to public as private corporations. No particular form of words is necessary to create a corporation. Where rights, privileges and powers are granted by law to an association of persons by a collective name, and there is no mode by which such rights can be enjoyed or such powers exercised without acting in a corporate capacity, such associations are by implication corporations, so far as to enable them to exercise the rights and powers granted. Angell & A. on Corp. secs. 76 *et seq.; U. S. v. Babbit*, 1 Black, 61; *Gelpcke v. Dubuque*, 1 Wall. 221; *Wood Co. v. Lackawanna I. & C. Co.* 93 U. S.

624; *King v. Amery*, 1 T. R. 575; *Ex parte Newport Marsh Trustees*, 16 Sim. 346, 349; *Mahoney v. Bank of the State*, 4 Ark. 620; *Dean v. Davis*, 51 Cal. 406; *San Francisco v. Spring Valley Water Works*, 48 Cal. 493; 1 Morawetz on Corp. secs. 12, 18; *In re N. Y. Ele. R. Co.* 70 N. Y. 327, 343; *Thomas v. Dakin*, 22 Wend. 9, 69, 81; *Liverpool Ins. Co. v. Mass.* 10 Wall. 566; *Oliver v. Liverpool & L. Ins. Co.* 100 Mass. 531; *People v. Assessors*, 1 Hill, 620; *Stevens Point Boom Co. v. Reilly*, 44 Wis. 295; *State v. Stormont*, 24 Kan. 686; *Gilmore v. Norton*, 10 id. 504.

The act is unconstitutional in that it attempts to delegate to the commissioners the power to define and determine the boundaries of the drainage district. This power is essentially a legislative one, and one which could not be delegated. There is a provision in the constitution for the delegation of legislative powers to county boards, but nothing authorizing a delegation of legislative power to a *special* body. *People v. Parks*, 58 Cal. 625; Cooley on Const. Lim. secs. 121, 122.

The act is in violation of the constitution in that it provides for carrying on the proceedings and affecting the owners of property and property rights without due process of law. In the absence of a provision allowing the production and examination of witnesses, the commissioners cannot hear testimony. *Vanwickle v. C. & A. R. & T. Co.* 14 O. J. Law, 163; *Coster v. N. J. R. & T. Co.* 24 id. 730; *Clarksville & H. Turnpike Co. v. Atkinson*, 1 Sneed, 426. Property owners are deprived of the right to test the question whether the public health or welfare will be promoted. They should have ample opportunity to show that there is no reasonable pretense for calling into action the police power, and that the entire scheme is one for purely *private* profit and advantage. No interference with private property can be tolerated, except when public health and convenience — embraced in public welfare — require it and are

the paramount object. *Donnelly v. Decker*, 58 Wis. 469, 473; *In re Ryers*, 72 N. Y. 7, 8; *Reeves v. Treasurer*, 8 Ohio St. 333; *Sessions v. Crunkilton*, 20 id. 349. And no action under this act which is shown to have any other object than to maintain the public health or welfare can be sustained. *In re Jacobs*, 98 N. Y. 98; *Lake View v. Rose Hill Cemetery Co.* 70 Ill. 191. As to what constitutes "due process of law," see Webster's Dict.; *Westervelt v. Gregg*, 12 N. Y. 209; Cooley on Const. Law, 355; *Davidson v. New Orleans*, 96 U. S. 104–5; *Hurtado v. California*, 110 id. 516, 535; *Loan Asso. v. Topeka*, 20 Wall. 662; *Durkee v. Janesville*, 28 Wis. 464; *Hincks v. Milwaukee*, 46 id. 566.

For the Stoughton Mill Co. there was a brief by *Luse & Wait*, and oral argument by *L. K. Luse*.

For the respondent there was a brief by *Rogers & Hall*, attorneys, and *H. W. Chynoweth*, of counsel, and oral argument by *W. H. Rogers* and *H. W. Chynoweth*. They argued, among other things, that the act does not confer corporate powers or privileges in the sense intended by the amendment to the constitution. It is true that a drainage district is a *quasi* corporation, but it is created, in this case, for a temporary purpose merely, and lacks the characteristic of perpetuity, essential to a corporation. It is less of a corporation than a town, county, or school district; and they are not within the constitutional prohibition. *Norton v. Peck*, 3 Wis. 714; *Eaton v. Manitowoc Co.* 44 id. 493; *Cathcart v. Comstock*, 56 id. 590; *Pulaski Co. v. Reeve*, 42 Ark. 54; *Beach v. Leahy*, 11 Kan. 23; *Soper v. Henry Co.* 26 Iowa, 264; *Morey v. Newfane*, 8 Barb. 645; *Sussex v. Strader*, 18 N. J. Law, 108; *Mower v. Leicester*, 9 Mass. 247; *Hedges v. Madison Co.* 6 Ill. 567; *State ex rel. Att'y Gen. v. Pawnee Co.* 12 Kan. 426; *Pottawatomie Co. v. O'Sullivan*, 17 id. 58; *Norton Co. v. Shoemaker*, 27 id. 77; *Knowles v. Board of Education*, 33 id. 692; *Hamilton Co. v. Mighels*, 7 Ohio St. 109; *State ex rel. Att'y Gen. v. Cincinnati*, 20 id.

18; *State ex rel. Att'y Gen. v. Shearer*, 20 N. E. Rep. (Ohio), 335; *State ex rel. Att'y Gen. v. Covington*, 29 Ohio St. 102; *Woods v. Colfax Co.* 10 Neb. 552; *Sherman Co. v. Simons*, 109 U. S. 735; *State v. Wilson*, 12 Lea (Tenn.), 246; *Board of Education v. Moore*, 17 Minn. 412.

In any case, the act is valid as an exercise of the police power of the state. *People ex rel. Wood v. Draper*, 15 N. Y. 532; *Mayor v. Board of Police*, 15 Md. 376; *Burch v. Hardwicke*, 30 Grat. 24; *State ex rel. Atwood v. Hunter*, 38 Kan. 578; *Potter's Dwarris on Stat.* sec. 452; *People v. Shepard*, 36 N. Y. 286; *Coe v. Schultz*, 47 Barb. 64; *Donnelly v. Decker*, 58 Wis. 461, 468.

The act is neither private nor special. It is both public and general. *Cathcart v. Comstock*, 56 Wis. 590; *Phillips v. Albany*, 28 id. 340; *Zitske v. Goldberg*, 38 id. 233; *State ex rel. Webster v. Baltimore Co.* 29 Md. 516; *Harrison v. Stickney*, 2 H. L. Cas. 108.

Private property and private rights are fully protected. The provisions of the act in this respect are not different from those in other acts repeatedly upheld by the courts. See *Donnelly v. Decker*, 58 Wis. 461; *Wurtz v. Hoagland*, 114 U. S. 606; *Tide Water Co. v. Coster*, 18 N. J. Eq. 518; *Hagar v. Reclamation District*, 111 U. S. 701; *Fries v. Brier*, 111 Ind. 65; *Macon v. Patty*, 57 Miss. 378; *S. C. 34* Am. Rep. 451; *Mills v. Charleton*, 29 Wis. 401; *Chicago v. Larned*, 34 Ill. 203; *Harward v. St. Claire Drainage Co.* 51 id. 130; *Dean v. Davis*, 51 Cal. 406; *Hagar v. Yolo Co.* 47 id. 222; *Davis v. Gaines*, 48 Ark. 370; Cooley on Taxation, ch. 20.

COLE, C. J. This is a proceeding to reverse and set aside an order of the circuit judge of Dane county appointing three drainage commissioners under ch. 383, Laws of 1889. The validity of this act is challenged on several grounds.

In the first place it is insisted that the act is void because

in conflict with subd. 7, sec. 31, art. IV, of the constitution, which prohibits the legislature from enacting any special or private law granting corporate powers or privileges, except to cities. That ch. 383 is a special act as distinguished from a general law, it seems to me there can be no doubt. In *State ex rel. Cothren v. Lean*, 9 Wis. 279, and in some subsequent cases, the words " general law " received a very liberal interpretation; one sufficiently broad to comprehend what some authorities denominate " public local laws; " but unless all distinction between a general law and a special law is broken down I can but think the law in question is a *special* act. It is entitled an act to amend an act to provide for the drainage and reclamation of certain lands in Dane county, and in its terms applies mainly to lands in that county. I must therefore consider it a special act intended to accomplish or carry out a local system of drainage.

That the act grants certain corporate powers it seems to me equally plain. Whether those powers are the corporate powers and privileges the amendment of 1871 was intended to prohibit the legislature from granting by a special act, is a question which will be considered in a moment. But now without going into an analysis of the provisions of the act, it is sufficient to remark that the law clearly grants certain corporate powers and privileges, within the meaning of many well considered cases to which our attention was called on the argument. The law declares that the commissioners shall be known as " drainage commissioners of drainage district number one of Dane county." They are to take an oath and give bonds for the faithful performance of their duties; cause accurate surveys to be made of the route of the proposed system of drainage; after hearing parties interested the board decides whether in their opinion the public health or welfare will be promoted by the intended work; if so they classify lands for the as-

sessment of benefits and taxes to execute the same; assess such benefits and taxes; make contracts; incur obligations, sue and enforce the collection of delinquent assessments; and exercise other corporate powers. They exercise many powers of regular corporate bodies, and the act seems to constitute the drainage commissioners a corporation to accomplish and carry out the work of the proposed system of drainage.

But the counsel for the respondent insist and claim that even if the act does grant certain corporate powers, they are not of that nature and character which it was the intent of the amendment to prohibit the legislature from granting by a special act. It is said the drainage commissioners are organized as a *quasi* corporation for a governmental purpose, in order to execute the police power of the state in a particular district for the promotion of the public health and welfare. It is conceded that the police power of the state extends to the promotion of the health, comfort, and good order of its citizens; and it cannot be successfully denied that drainage laws ⁺ are enacted mainly to secure these ends. The declared purpose of the law in question is to promote the public health and welfare by executing a system of drainage. That is the main purpose and object of the law.

The question as to the validity of drainage laws was fully considered by this court in *Donnelly v. Decker*, 58 Wis. 461. There the town supervisors under the general statute had constructed a ditch through the plaintiff's land, and were sued in an action of trespass. This court held that the law providing for the construction of ditches and drains to drain marsh, swamp, and overflowed lands was valid, and that when in the judgment of the supervisors such ditches would conduce to the public health and welfare they could be lawfully made. Without further discussion it may be assumed that the law in question falls within

the police power, and the commissioners exercise under it a police authority intended to promote the public health and welfare. The question then is, Does the constitutional amendment of 1871 prohibit the legislature from granting these powers for such a purpose by special act? While the question is not free from doubt, we are inclined to the opinion that the legislature had the constitutional power to enact the law. It is certainly well-established doctrine that the state constitution is simply a limitation of the power of the legislature, and that in respect to the enactment of laws the legislature has plenary power except so far as it is restricted in its action by the precise terms of the federal and state constitutions. It might be difficult to draw an accurate line between the corporate powers and privileges which the legislature is prohibited from granting by special laws, and those which they may grant by such laws. No test has been suggested which is entirely satisfactory to our minds. It is said the restriction applies alone to granting powers to private corporations, and was not intended to limit the legislature in conferring corporate powers upon *quasi* corporations which are political in their character and are agencies for exercising the powers and duties of local government. This view might be adopted as sound were it not for the exception of cities in the clause. There would seem to be no object or necessity for making the exception if the restriction had no application to a special law conferring corporate powers upon governmental subdivisions of the state. For cities are municipal corporations organized to exercise powers of local government and police regulations. We do not understand that subd. 7, sec. 31, art. IV, has been construed by this court as being a prohibition only as to the grant of corporate powers and privileges to purely private corporations which are organized for private gain; and that it does not apply to *quasi* corporations which perform governmental functions. The

main object of this clause of the amendment may have been to prohibit the legislature from granting corporate powers and privileges to private corporations except by a general law. But we are not prepared to say that this was the only object of the clause. This provision was not before the court in *Smith v. Sherry*, 50 Wis. 213; *Cathcart v. Comstock*, 56 Wis. 590, 610; and *Chicago & N. W. R. Co. v. Langlade Co.* 56 Wis. 614.

We shall not attempt to lay down any general rule which will furnish a test in all cases as to what corporations come within the amendment; it is a safer course to let each law be considered upon its own provisions and subject matter as it may come before the court. It is sufficient now to say that ch. 383, which organizes the board of drainage commissioners to carry out the prescribed system of drainage in Dane county, is not in conflict with the amendment of 1871. Under the authority conferred the board exercises a police power for the promotion of the public health and welfare, and is not clothed with corporate powers or privileges forbidden by the amendment. This same question as to the grant of corporate powers by a special law was involved in *Bryant v. Robbins*, 70 Wis. 258. It is obvious that if this law is obnoxious to the constitutional objection urged of granting corporate powers which the legislature was prohibited from granting, the law of 1885 [ch. 442] was open to a like objection. Yet no such objection was taken to the law in that case, although it was argued by the same able and distinguished counsel who assails the law of 1889 on that ground.

It may be, as the relator's counsel suggests, that the powers conferred upon the commissioners could have well been exercised by the county board of supervisors. The county board has under the general law power to construct county drains where they will conduce to the public health and welfare. Ch. 54, R. S. But the legislature may have

thought the drainage prescribed in the law of 1889 would be more properly and effectually done under the direction of a board of commissioners who would have charge of the work until completed. The county board consists of many members and the personnel is constantly changing. The members are not generally chosen with reference to any peculiar fitness for such work, though they have ample authority under the statute to inaugurate it. But whatever may have been the motive or reason which induced the legislature to enact the law, is an immaterial inquiry if the law is valid.

The law gives the commissioners, after hearing the parties in the matter who shall appear before them, power to decide whether the public health or welfare will be promoted by the intended work. A favorable decision by them of that question is conclusive. No appeal is granted for any further hearing on the question as to the necessity of the drainage. The law is vigorously assailed because it provides no appeal for the trial of that question. From the nature of the case it would seem that there should be somebody to determine the question of the necessity of the drainage for the public benefit. Is each person whose land is affected by the drainage entitled to a jury trial of the issue? If so, one jury might find one way, another jury find another way, and a marsh which was the cause of sickness and death, and was really a nuisance, would never be drained. The legislature might have declared the marshes in this case a nuisance, and taken steps for draining them. The question of necessity could not have been inquired into except where it was apparent that there was an attempt to evade the constitution and advance some scheme under the pretense of promoting the public health and welfare. In the case of a county drain the county board decides upon the necessity, and there is no appeal from the decision of the question. The principle involved is analogous to tak-

ing property by right of eminent domain. Where a municipal corporation takes property for public use the jury conclusively decides the question of necessity. The legislature may determine the necessity of the exercise of the power, and the extent to which the exercise shall be carried, or it may delegate the exercise of that right to officers or corporations. " It is not indispensable that the legislature shall determine that any given enterprise is necessary and proper before putting in operation the power of eminent domain. This power is primarily an absolute one, and theoretically exists in this absolute form in the ultimate source of authority in every organized society. In the constituted government of this state the right of exercising it has been confided to the legislature, restricted by only two conditions: one that compensation shall be made to the owner of the property taken; the other, that the use for which the property may be taken shall be a public use. In other respects it is without limits. Whether the purpose to be subserved be necessary or wise is for the legislature alone. That body, also, must decide when or under what circumstances the occasion for its exercise arises; but whether the legislature will await the actual existence of the occasion before determining to employ its prerogative, or will declare in advance what condition of things shall furnish the exigency for its agents to act, is a question purely for legislative discretion." This language of the court of New Jersey in *National D. R. Co. v. Cent. R. Co.* 32 N. J. Eq. 755, 763, is applicable to the point we are considering. This doctrine is in accord with the views of all the authorities upon the subject, and was sanctioned by this court in *Smeaton v. Martin*, 57 Wis. 364; *Smith v. Gould*, 59 Wis. 631; and *Newcomb v. Smith*, 2 Pin. 131. It is upon this principle of public benefit that not only the agents of the government but also individuals and corporations have been authorized to take or invade private prop-

erty for the purpose of making highways, turnpike roads, and canals; of erecting and constructing wharves and basins; and of draining swamps and marshes. HUBBELL, J., in *Newcomb v. Smith*. No distinction is perceived in the case of taking land for a drain or other public purpose, for while the public have often great interest in drainage on sanitary grounds, this fact furnishes more cogent reasons for the legislature delegating the power of determining whether the necessity exists under the circumstances. It is obvious the question could never be determined by successive jury trials.

Another objection to the law is that it attempts to delegate to the commissioners the power of creating and defining districts for drainage purposes, which it is said belongs solely to the legislature. It is not apparent how the legislature could accurately define the boundary of the lands which should be drained, without more investigation than it has time to give such matters. As respondent's counsel say, the act does define the boundaries of the district; but it is left to the commissioners to determine what lands shall be drained and what lands shall be charged with assessments for doing the work. But the lands to be drained or reclaimed are in Dane county, and the nature and extent of the proposed drainage are clearly indicated. In *Teegarden v. Racine*, 56 Wis. 545, and *Dickson v. Racine*, 61 Wis. 545, authority was given the common council to define the taxing districts for local taxation; and it was held that the common council possessed *pro hac vice* the legislative power, whose action was as conclusive in the matter as if taken by the legislature itself. This is not like *People v. Parks*, 58 Cal. 625. There it is said "the legislature has not, in any of the provisions of the act under consideration, designated any particular river, stream, or locality within the state where drainage was necessary; nor located or established the boundaries of any drainage and assessment district within

the limits of which taxes are to be levied, assessed, and collected for the purpose of raising funds to defray the cost and expenses of the system of works designated by the act." P. 641. The legislature could not well enter upon an inquiry of the lands which should be drained, but naturally referred that subject to the commissioners who could investigate the facts. The commissioners could determine what lands would be benefited by the work, and assess the burdens in proportion to the benefits received. We see no objection to this feature of the law. See Cooley on Taxation (2d ed.), 149, and cases cited in the notes.

It is further insisted that the act is void because it provides a method of drainage which affects property rights without giving the owner of the land the benefit of due process of law. The act gives an appeal from the decision of the commissioners in classifying the lands for assessment; from the amount of damages awarded for any land taken or injured; from the taxes and benefits apportioned; indeed from the decision of all material questions which can arise, except from the decision as to the necessity of the drainage to promote the public health and welfare. We have stated some reasons for the conclusion that the act is not void for that feature in it. But upon the other questions the aggrieved party has an appeal. Under the circumstances it cannot be truthfully said that a person has had his property taken from him, or invaded, or burdens imposed upon it, without a hearing or due process of law.

The plain and declared object of the act is the promotion of the general health of the community and the public welfare by the execution of the proposed system of drainage and the improvement of waste land which will result therefrom. These manifest advantages and benefits, both public and private, would seem to fully justify its enactment. The validity and wisdom of such legislation has been amply vindicated by courts which have considered the subject,

and no further remarks are called for upon the general question.

As we perceive no valid objection to ch. 383, the order of the circuit judge appointing the drainage commissioners is affirmed, and the cause is remanded for further proceedings according to law.

*By the Court.*— Ordered accordingly.

CASSODAY, J., dissents.