[S. F. No. 6024.    In Bank.—July 3, 1914.]

HERBERT FFARINGTON PIXLEY et al., Minors, by J. F. D. Curtis, as Guardian, etc., Appellants, v. JOHN A. SAUNDERS, as Tax-collector of the County of Marin, Respondent.

SANITARY DISTRICT—TERRITORY THAT MAY BE INCLUDED IN—IDENTITY RETAINED AFTER PART IS ABSORBED BY A MUNICIPALITY.—In enacting the Sanitary District Act of March 31, 1891, the legislature had in mind the sanitation of any territory which might conveniently be served by a single system, whether wholly unincorporated or not, and a sanitary district formed under that act preserves its identity and retains its powers over the whole territory, except in the event of its complete absorption by a municipality.

ID.—CONSTITUTIONAL LAW—SANITATION NOT LOCAL OR MUNICIPAL AFFAIR.—While generally the question of sanitation is a municipal affair, in many instances it is one of broader scope, which cannot be adequately handled by the municipal authorities of a single town. Therefore it cannot be said to be a "local" or "municipal" affair within the inhibition of sections 12 and 13 of article XI of the constitution, but it falls within the class of public purposes for which the legislature has the authority to provide governmental agencies or districts by general laws.

APPEAL from a judgment of the Superior Court of Marin County and from an order dissolving an injunction. Edgar T. Zook, Judge.

The facts are stated in the opinion of the court.

Robert Harrison, for Appellants.

Albert J. Dibblee, *Amicus Curiae,* for Town of Ross.

Thos. P. Boyd, for Respondent.

THE COURT.—Upon the last submission of this case to the court in Bank the following opinion was then adopted:

Plaintiffs, who are the owners of a tract of land in Marin County known as the Pixley Ranch, brought this action to restrain the tax-collector from selling said property for delinquent taxes levied thereon by the authorities of Sanitary District No. 2 of Marin County. From a judgment upholding the validity of the tax an appeal is taken. And there is also an appeal from the order dissolving the injunction whereby the tax-collector was restrained from proceeding to sell the property *pendente lite.*

The learned judge of the superior court who presided at the trial of the cause put his "Judgment and Decree" in the form of an opinion setting forth the law which he considered applicable to the case. As we agree with his views, we adopt his opinion, which is in the following language:

"This is an action brought by the owners of a tract of land in Marin County, known as the Pixley Ranch, to restrain defendant, as tax-collector, from selling said ranch for delinquent taxes levied thereon by Sanitary District No. 2 of said county.

"The cause was submitted to the court upon an agreed statement, from which the following facts appear:

"In January, 1902, Sanitary District No. 2 of the county of Marin was duly and regularly organized under the provisions of the Sanitary District Act of March 31, 1891, and the tract here involved was embraced within the boundaries of the district at said time. Thereafter, in 1905, the Sanitary District made a bond issue for $25,000 for the purpose of constructing a sewer, and at the time of the levy of taxes for 1910, there remained outstanding and unpaid $19,500 of the principal of said bonds.

"On March 2, 1908, the town of Larkspur was regularly incorporated as a municipal corporation of the sixth class, and said Pixley Ranch was at said time, and now is, included within the territorial limits thereof. Since its incorporation, the town of Larkspur has regularly levied and collected taxes upon said Pixley Ranch for all town purposes, which taxes have always been paid.

"In 1910, the assessor of the Sanitary District made his assessment of the property of the district, including therein the Pixley Ranch, and upon the return thereof, the Sanitary

Board of the District levied a tax of 86 cents for $100 for the fiscal year 1910–1911. Of this levy 71 cents was. levied for the bond fund of the district to that year's proportion of the principal of and interest on outstanding bonds, and the remaining 15 cents was for running expenses. The amount of the tax on the Pixley Ranch was $121.90, which plaintiffs refused to pay. Defendant, as tax-collector of Marin County, thereupon published his notice of sale for delinquent taxes in the usual manner, fixing June 26, 1911, as the date on which he would sell said ranch unless said taxes, together with the costs and penalties provided by law, were paid.

"Plaintiffs' complaint was filed June 13, 1911, setting forth the facts substantially as above stated, and alleging that by reason of the inclusion of the Pixley Ranch within the limits of the town of Larkspur, the property had passed out of the control and jurisdiction of the Sanitary District, that the proposed tax-sale was therefore without authority, that the same would constitute a cloud upon the title of plaintiffs, and praying for a permanent injunction restraining defendant from proceeding further with the sale. By stipulation of the parties an injunction *pendente lite* was granted, and the cause was briefed and submitted to the court upon the pleadings and the agreed statement of facts above referred to.

"Plaintiffs' position, briefly stated, is this: That the power of providing for sewers is peculiarly a municipal affair, over which each municipality must exercise exclusive control within its own limits; that the Sanitary District Act of March 31, 1891, was a legislative makeshift intended solely to afford to unincorporated territory an opportunity to provide for its sanitation until such time as it might, by annexation or incorporation, acquire the larger powers of a municipal corporation; that immediately upon the annexation or incorporation of any portion of the territory of a sanitary district, such annexed or incorporated tract becomes part of another *imperium* and is relieved from the control of the sanitary district to which it formerly owed allegiance.

"Defendant, on the other hand, contends that the Sanitary District Act was intended to be general in its application, and to apply to any district which by reason of the natural configuration of the land therein might advantageously be served by a single system of sewer construction, whether wholly unincorporated or not.

"The endeavor to arrive at a conclusion between these diametrically opposed contentions is attended with considerable difficulty, in view of the loose manner in which the Sanitary District Act is framed. While the act has been under consideration by the supreme court in several cases, the precise question here involved has never been determined.

"In *Woodward* v. *Fruitvale Sanitary District*, 99 Cal. 554, 562, [34 Pac. 239], the validity of the organization of a sanitary district covering wholly unincorporated territory was in question. The constitutionality of the act was challenged upon the ground that its terms were broad enough to permit the organization of sanitary district to embrace municipalities, and that it was therefore in conflict with the provisions of secs. 12 and 13 of article XI of the constitution, which read as follows:

" 'Sec. 12.    The legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.'

" 'Sec. 13.    The legislature shall not delegate to any special commission, private corporation, company, association, or individual, any power to make, control, appropriate, supervise, or in any way interfere with, any county, city, town, or municipal improvement, money, property, or effects, whether held in trust or otherwise, or to levy taxes or assessments, or perform any municipal functions whatever.'

The court in that case, speaking through Searles, commissioner, declined to pass upon the constitutional question thus raised, for the reason that the district there involved did not embrace any incorporated territory. There is a strong intimation, however, in the following language that a sanitary district may not embrace any territory belonging to municipal corporations:

" 'It may well be that if in the formation of a sanitary district an incorporated city or town shall be included, in which the authority conferred upon the sanitary board is delegated to the municipality, it will be held that the law was not intended to apply to such city or town. The illustration is only used by way of comparison and not to indicate an opinion upon a case which may never arise.'

"In the case of *People ex rel. Cuff* v. *City of Oakland*, 123 Cal. 598, 600, [56 Pac. 445], it was contended that the territory embraced in a sanitary district could not be annexed to a municipality. The court there said:

" 'If the statute permits territory embraced in or covered by a sanitary district to be annexed to a city,—a municipal corporation of a higher class and capable of exercising the same functions as well as others essential to municipal government—such statute contemplates, *ex necessitate rei,* a cession of the powers of the inferior corporation to the greater, and a consequent dissolution of the former as a result of the annexation.'

"It is to be noted, however, that in this last case, no sanitary district was a party to the action, and the language used was therefore *dicta.*

"In the recent case of '*The Petition of the East Fruitvale Sanitary District,*' 158 Cal. 453, 459, [111 Pac. 368], the effect of the annexation of the whole of a sanitary district to a municipal corporation was under consideration. The court there held that the necessary effect of such annexation would be the dissolution of the sanitary district, but it declined to pass upon the question as to the effect of the annexation of a part only of a sanitary district. While the rule laid down in the Cuff case was held by the court to be correct in the case of the annexation of an entire sanitary district, the court says:

" 'The Sanitary District Act contains one or two expressions which might seem to indicate that a sanitary district may cover in whole or in part territory within the boundaries of a municipal corporation. Thus section 5 in granting the power to enter upon a street or road for the purpose of making excavations, declares that in case such street or road shall be in an incorporated city or town the consent of the lawful authorities thereof shall first be obtained.' Section 21 provides that upon the dissolution of the districts its property shall vest 'in any incorporated city or town that may at said time be in occupation of a considerable portion of the territory of the district.' *It may be readily conceived that the legislature had in mind the possibility that a region, including territory both incorporated and unincorporated, might be so situated as to require a single and comprehensive scheme of sewer construction,* or that in laying a sewer for a sanitary

district outside of any city or town, it might be necessary to pass through the streets of some municipality in order to reach an outlet. The provisions referring to incorporated cities or towns may have been intended to apply in such cases (and, so read, they may be given full effect without holding that the act contemplated the formation or the continued existence of a sanitary district entirely within the boundaries of a municipal corporation).

"The question here involved is thus left open by the supreme court. Turning to the act itself, we find, in addition to the quotations from sections five and twenty-one referred to in the East Fruitvale case that the title of the act is as follows: 'An act to provide for the formation, government, operation and dissolution of sanitary districts, *"in any part of the state,"* ' etc. Section one provides: 'Whenever twenty-five persons *in any* county of the state shall desire the formation of a sanitary district *within the county* . . . ' These expressions certainly do not indicate an intention to limit the operation of the Sanitary District Act to any particular class of territory, and taking this general language, together with the reference to section twenty-one to 'any incorporated city or town that may (at the time of dissolution of the district) be in occupation of a considerable portion of the territory of the district,' it may be fairly inferred that the legislature intended that sanitary districts might embrace both incorporated and unincorporated territory.

"There are many practical considerations which lead the court to adopt this view of the legislative intent. In many instances in California, the limits of the incorporated towns are small, and just beyond these limits the territory is quite thickly populated. It is of vital importance to these towns that the sanitation of such adjacent districts be good, especially where the natural drainage from such outlying territory runs through the towns, yet no municipality is authorized to construct sewers to serve territory lying outside of its own boundaries. The following language from the case of *Wilson* v. *Board of Trustees of Sanitary District,* [133 Ill. 443, 466], 27 N. E. 203, 207, supports this view:

" 'If the general assembly may vest the power (to provide sanitation) in cities, towns, and villages, and may also create a corporation in the country and invest it with the power, it would seem to inevitably follow that it may create a corpora-

tion including both city and country, and invest it with the power. It must be evidence that often, to render the exercise of such power by cities effective, it would have to be exercised over large rural districts adjacent to cities, as in case of large malarious swamps, lying within the vicinity of cities, and in other instances where the air and water to be used by the city population would be poisoned and laden with germs of diseases by causes existing beyond the city limits. In such cases the preservation of health in the city would require that municipal authority would be exercised beyond the city limits, and it would violate no principle of constitutional law to create a district, and invest it with powers of taxation for sanitary purposes, coextensive with the territory to be controlled. If districts may be thus organized, the question of the propriety of their organization, in this, or any other particular instance, belongs to the general assembly, and not to the courts; and it has been repeatedly held in other states that they may be thus organized. (*Reeves* v. *Treasurer of Wood County*, 8 Ohio St. 333; *Thompson* v. *Treasurer of Wood County*, 11 Ohio St. 678; *Anderson* v. *Drainage Co.*, 14 Ind. 199, [77 Am. Dec. 63]; *O'Reiley* v. *Drain Co.*, 32 Ind. 169; *Sessions* v. *Crunkilton*, 20 Ohio St. 349; *Woodruff* v. *Fisher*, 17 Barb. (N. Y.) 224; *Hartwell* v. *Armstrong*, 19 Barb. (N. Y.) 166; *In re New Orleans Drainage Co.*, 11 La. Ann. 338; *Dean* v. *Davis*, 51 Cal. 406; *Donnelly* v. *Decker*, 58 Wis. 461, [46 Am. Rep. 637, 17 N. W. 389]; *State* v. *Stewart*, 74 Wis. 620, [6 L. R. A. 394, 43 N. W. 947].)'

"Again the general rule as to the disposition of property upon the annexation of a portion of one public corporation to another public corporation is that the property lying in the annexed territory belongs wholly to the corporation to which it is annexed, and the annexed territory is freed from all obligation for the debts of the corporation to which it formerly belonged. This rule is based upon the principle that the legislature has the right to alter the lines of subordinate governmental agencies at will, and the propriety of its action in so doing cannot be questioned. In the ordinary case of a school district or other public corporation, the rule works no injustice, because the property thus transferred to a new jurisdiction is itself unaffected by the change. But it would be impracticable to apply the same rule to the sewer system of a sanitary district, because all of its parts are so related to

each other that the severance of one part would necessarily impair or destroy the usefulness of the remainder. For example, if the territory at the outlet of a sanitary district were annexed to a municipality, the rest of the system, if deprived of its outlet under the rule referred to, would be practically useless.

"A concrete instance of the actual conditions to be considered is the case of the San Anselmo Valley in this county, a narrow valley draining into Green Brae Slough. Sanitary District No. One of Marin County was organized in 1899 to serve the whole of this valley, which includes the territory now known as Kentfield, Ross, and San Anselmo. A single, comprehensive sewer system was installed, which has taken care of the sewage of the whole valley up to the present time. In 1907 the town of San Anselmo was incorporated, embracing territory at the upper end of the valley, and a year later the town of Ross was also incorporated, its northern boundary coinciding with the southern boundary of San Anselmo. The incorporation of these two towns left a large tract of unincorporated territory at the outlet of the district, known as Kentfield. All three parts of the district have worked harmoniously under the jurisdiction and control of the Sanitary District, conceding to it full power in all matters pertaining to sanitation. If it were intended that each of these towns upon its incorporation should be withdrawn from the control of the district in matters of sanitation, taking with it the portion of the system lying within its boundaries, we would have a sanitation where San Anselmo would have a sewer system stopping at its southern boundary several miles from any outlet, and Ross would have control of an intermediate portion, also without an outlet. Kentfield would have a small portion of the system, upon which would be saddled the whole of the debt incurred for the construction of the entire system, under the common-law rule that upon the severance of territory from a public corporation the debt remains with the old corporation. Each of the two upper towns would thus be compelled to acquire by purchase or condemnation, a separate outlet for its sewage, and as a result there would be three separate sewer systems where one had theretofore sufficed. The outlet from San Anselmo having to pass necessarily through Ross, we would have that town owning property within the limits of Ross; and should Kentfield incorporate (as is now proposed),

it would have in its territory two lines of sewers owned by other towns. In the event that the portion of the outlet of the San Anselmo system lying in Ross should require repairs, the town of San Anselmo would have to get the permission of the town of Ross to open the streets under which the San Anselmo sewer ran, and there would be a constant conflict between the different authorities.

''The condition above described leads inevitably to the conclusion that while generally the question of sanitation is a municipal affair, in many instances it is one of broader scope, which cannot be adequately handled by the municipal authorities of a single town. Therefore it cannot be said to be a 'local' or 'municipal' affair within the inhibition of sections 12 and 13 of the constitution above quoted, and it falls within the class of public purposes such as irrigation and reclamation, for which the legislature has the undoubted authority to provide governmental agencies or districts by general laws.

''In this connection it is interesting to note that although municipal corporations of the fourth and sixth classes have the power to acquire water-works and supply water for irrigation purposes (Municipal Corporation Act, sec. 622, sec. 862, subd. 3), it was held in the case of the *Madera Irrigation District*, 92 Cal. 296, at 344, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675], that the system of irrigation contemplated by the irrigation district act was not a 'municipal purpose' within the scope of the organization of a city or town. So here it is evident that the sanitation of a whole valley, embracing several towns, is not a 'municipal purpose.'

''For the reasons above stated, it is the conclusion of the court that in enacting the Sanitary District Acts, the legislature had in mind the sanitation of any territory which might conveniently be served by a single system, whether wholly unincorporated or not, and that a sanitary district formed under said act preserves its identity and retains its powers over the whole territory, except in the event of its complete absorption by a municipality.''

After further consideration we have adopted the above opinion.

The judgment and order are affirmed.

Beatty, C. J., does not participate in the foregoing.