RUDE, Appellant, vs. TOWN OF ST. MARIE, Respondent.

*November 17, 1903—May 10, 1904.*

*Drains: Application to supervisors: Notice of pendency: Police power: Private uses: Abatement of nuisance: Special assessments: Eminent domain.*

1. An application to the *supervisors* of a town, under sec. 1359,. Stats. 1898, for the laying out of. a ditch or drain is not an application to the *town board* within the meaning of sec. 3187a, and the filing of a notice of the pendency of the application is therefore not essential.

2. The construction of ditches or drains under ch. 54, Stats. 1898, is not for merely private uses, but, in the exercise of the police power of the state, to promote the public health and welfare. Certain remarks in *Donnelly v. Decker*, 58 Wis. 461, criticised.

3. The state has power to abate a public nuisance by compelling the drainage of lands which might otherwise create malaria or other diseases; and special assessments therefor, founded on the special benefits conferred, do not constitute a taking of private property for public use without just compensation.

4. The fact that there may be a special assessment of benefits against the owner of land on which a drain is constructed does not take the proceeding out from under the police power and place it under the power of eminent domain.

5. Even if a proceeding under ch. 54, Stats. 1898, results in the taking of one person's land under the power of eminent domain as a means of abating a nuisance on the lands of another, the statute protects all constitutional rights, since it provides for due compensation.

APPEAL from a judgment of the circuit court for Green Lake county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This action was commenced June 29, 1901, to recover back $41.92 paid by the plaintiff under protest for the amount of special assessment against the plaintiff in the construction of a drain across his lands. It appears from the record and is undisputed or found by the court, in effect: (3) That November 25, 1899, there was duly presented to the supervisors of the town a petition in writing, signed by twenty freehold-

ers residing therein, including one or more of the owners of·
portions of lands through which the enlargement of the ditch.
hereinafter mentioned would pass, and through which said
ditch was proposed to be laid out, and asking the supervisors·
to lay out in sections and enlarge a ditch for the purpose of·
draining marsh and overflowed lands therein pursuant to the·
provisions of sec. 1359, Stats. 1898; the line of said ditch to·
pass over and along certain lands of the plaintiff and other·
lands situated in said town.    (4) That the application and·
petition duly described the land through which the proposed·
ditch was to pass, together with the route of the same as
nearly   as practicable.    (5) That May 5, 1900, the super-
.visors of the town duly made out a notice pursuant to the pro-
visions of sec. 1360, Stats. 1898, fixing therein a time and·
place at which they would meet to examine and decide upon
the application and petition, such notice specifying as nearly·
as practicable the route of the proposed drain and ditch and
the several tracts of land through which the same would pass.
(6) That the route of said ditch was stated in the notice to
pass through the lands of the plaintiff, who was then a resi-
dent of the town.    (7) That the supervisors, pursuant to·
sec. 1360, Stats. 1898, duly caused the notice to be served
upon each of the resident owners, as therein prescribed.    (8)
That May 15, 1900, pursuant to such notice and sec. 1361,.
Stats. 1898, the supervisors did meet at the time and place·
¯designated in such notice, and did then and there proceed to·
examine the location where it was proposed to construct such
ditch, and did hear all reasons that were offered for and·
against the laying out and construction thereof, and did duly·
decide to lay out and establish the ditch and the enlargement
thereof, which said ¯ditch so established and laid out by the·
supervisors passed through and along the lands of the plaint-
iff and other lands; and May 26, 1900, the supervisors did
duly make an order establishing the route of the ditch, and
prescribing the width and depth thereof, and caused a survey·

to be made—all pursuant to sec. 1362, Stats. 1898.  (9) And
did duly make an order pursuant to sec. 1363, Stats. 1898,
dividing the ditch into seven sections—the same being not
less in number than the several parcels of land which would
be directly benefited by the construction of the ditch, and in
and by the order, among other things, provided that sections
3, 5, and 7 should be constructed, maintained, and kept in
repair by the plaintiff; and did further in and by the order
estimate the cost of construction of each section of said ditch,
to wit, $10 for section 3, $7.80 for section 5, and $15.60 for
section 7.   (10) That June 4, 1900, the supervisors did duly
make a further order and certificate certifying that the total
cost of construction of the ditch was $74.50, and apportioned
the cost among the owners of the several parcels of land in
the town, each of which tracts would, in the judgment of the
supervisors, be directly benefited by the construction and op-
ening of such enlargement of said ditch, and assessed upon
each of said tracts of land and the owners thereof the sum of
$74.50 in proportion to the benefits to be respectively derived
by such tracts of land, and duly assessed against the plaintiff
and his lands, for the construction of said ditch, pursuant to
sec. 1364, Stats. 1898, the sum of $33.40 as benefits; and the
supervisors at the time of making said order entirely failed
and refused to award to the plaintiff any damages occasioned
by the construction, enlargement, and opening of said ditch
through his lands.   (11) That the plaintiff, not being satis-
fied therewith, duly appealed therefrom pursuant to sec. 1366,
Stats. 1898; that upon the hearing of the appeal, June 23,
1900, by agreement between the supervisors and the plaintiff,
the appeal was dismissed and abandoned.   (12) That there-
after, and pursuant to *mandamus* proceedings, the supervis-
ors of the town did duly cause a survey of the ditch to be
made, and a map and plan thereof made, pursuant to the pro-
visions of sec. 1363, Stats. 1898, and in all things complied
with the provisions of that section.   (13) That October 17,

1900, the supervisors did duly make a certificate of additional assessment of benefits to be derived from the laying out of said ditch and enlarging the same in order to pay the additional expenses of said plan and map and survey, and the additional expenses entailed in the completion of the ditch and the enlargement thereof pursuant to sec. 1371, Stats. 1898, and in and by the certificates of additional assessment did assess against the lands of the plaintiff herein, and for the completion and enlargement of said ditch, the sum of $8.52, and in and by the certificate of additional assessment so made did direct the officers of the town, as provided by law, to collect the same as if the same had been levied and assessed under and by virtue of the orders and certificates of assessment so made May 26, 1900, and June 4, 1900, as aforesaid; and by virtue thereof there was duly assessed against the lands of the plaintiff for benefits derived in the laying out and construction and enlargement of said ditch in the aggregate the sum of $41.92.    (14) That October 22, 1900, the supervisors of the town did award to the plaintiff for damages which he would sustain by reason of the construction and opening and enlargement of said ditch the sum of $10 damages to the lands of the plaintiff, and in and by said award awarded damages to the owner of each parcel of land damaged as they adjudged reasonable and just.    (15) That thereafter said ditch and drain was duly constructed and enlarged, and the supervisors duly tendered to the plaintiff the work of constructing, in accordance with the specifications and within a reasonable time, such sections of such work as were located on the plaintiff's lands as hereinbefore found, at the prices estimated by the supervisors for doing the work so tendered, which tender the plaintiff refused, and refused to construct the same, and therefore the supervisors duly let to the lowest responsible bidder the sections of work in construction and enlargement of said ditch not so disposed of and not so constructed and performed by the plaintiff, after posting no-

·tices for proposals therefor, as required by sec. 1370, Stats. 1898, and the contract awarded for the construction of said ·sections of said ditch was at a price not greater than the original estimate of the cost thereof made by the supervisors, as ·increased by them by their certificate of additional assessment made October 17, 1900.    (16) That January 7, 1901, the ·amount so assessed for benefits, to wit, $41.92, was collected from the plaintiff pursuant to sec. 1369, Stats. 1898, and that ·amount was paid by the plaintiff to the town treasurer under ·protest made by him at the time of such payment.    (17) That all orders and papers and plans and specifications made by ·the supervisors were duly filed in the office of the town clerk. ·(18) That the supervisors in laying out and constructing said ·ditch, and in enlarging the same, and in assessing the benefits to be derived therefrom against the plaintiff and his lands, and in all the proceedings in laying out and construct·ing and enlarging said ditch and in levying such assessment ·against the plaintiff and his lands, duly followed all the provisions of ch. 54, Stats. 1898, in that behalf, and duly did ·all things and performed all acts that were necessary to be performed and prescribed by said ch. 54 to authorize them to lay out, construct, and enlarge said ditch.    (19) That by ·reason of the action of the supervisors the plaintiff was in·debted to the town and the town treasurer in the sum of ·$41.92.    (20) That no notice of the pendency of any appli·cation for the laying out, constructing, or enlarging of said ·ditch of any kind was ever filed in the office of the register of ·deeds.

And as conclusions of law the court found, in effect, that ¬the supervisors, in laying out and constructing said ditch and ·enlarging the same, and in assessing the $41.92 against the plaintiff and his lands, in all things duly acted pursuant to ·law and to the authority in them vested by ch. 54, Stats. 1898; ·that the town treasurer had due and legal authority to collect ¬from the plaintiff the $41.92 so paid by him to the town

treasurer; that no cause of action exists in favor of the plaintiff and against the defendant; that the complaint in this action should be dismissed, with costs against the plaintiff. From the judgment entered thereon accordingly the plaintiff brings this appeal.

*John J. Wood, Jr.,* for the appellant.

For the respondent there was a brief by *W. E. Cavanaugh,* attorney, and *Perry Niskern,* of counsel, and oral argument by *Mr. Cavanaugh.*

CASSODAY, C. J. The proceedings in question were in pursuance of ch. 54, Stats. 1898, entitled "Town Drains," which authorizes the draining of "marsh, swamp or over-flowed lands." The lands affected by the drain were determined by the supervisors to be a marsh, and were located in two adjoining quarter sections in the defendant town. The plaintiff owned 120 acres thereof, and three other persons respectively owned portions of the other 200 acres. It appears that prior to such proceedings there had been an old ditch, and the proceedings were, in part at least, to widen and deepen the old ditch. There is no claim that the proceedings were not conducted in accordance with the several provisions of the chapter mentioned. The principal contention is that the proceedings were void for failure to file in the register's office "a notice of the pendency of such application," as prescribed in sec. 3187a, Stats. 1898. Counsel is certainly correct if that section is applicable, for the section declares that "neglect to comply with" the provisions of that section "shall render all proceedings based upon such application void." Counsel contends that it is applicable, because it requires "every person who makes an application to any court, county board, common council, village board, or *town board,* for laying out, widening, extending, or vacating any street, alley, water channel, park, highway, or other public place," to file such notice of *lis pendens;* and that

the words *"or town board"* were not stricken out by ch. 121, Laws of 1901, until after the proceedings in question. On the other hand, it is claimed on the part of the defendant that such application was not made to the "town board," and that the "town board" did not lay out the ditch in question. The statute required the petitioners to "make application in writing to the supervisors in the town," etc. Sec. 1359, Stats. 1898. The subsequent sections applicable in ch. 54 repeatedly prescribe the duties of supervisors in such matters, but nowhere refer to them as the "town board." Secs. 1360–1371a, Stats. 1898. The application in this case was "to the supervisors of the town." This court has, in effect, held that supervisors acting under ch. 54 of the statutes are in the exercise of a police power conferred upon them as public or governmental officers by statute, and not as a town board. *Williams v. Yorkville,* 59 Wis. 119, 17 N. W. 546; *State ex rel. Gordon v. McNay,* 90 Wis. 104, 62 N. W. 917. Hence we must conclude that the application was to them as governmental officers, and not as a town board, so that it does not fall within the letter of sec. 3187a, Stats. 1898, to the words of which we have no right to add by construction. The proceeding, therefore, is not void by reason of failure to file notice of *lis pendens* in accordance with that section.

Nevertheless, counsel for the appellant contends that such an application, whether it results in taking land under the power of eminent domain or merely calls into operation the police power, is a proceeding affecting the lands relative to which the application operates, and that one object of the section is to protect subsequent purchasers or incumbrancers. It declares that "no final order, judgment or decree or final resolution or order *taking or affecting* such land, based upon any application therefor, shall have any effect, or be notice to any subsequent purchaser or incumbrancer, unless" such notice of *lis pendens* is filed. Id. Counsel seem to rely upon *Svennes v. West Salem,* 114 Wis. 650, 91 N. W. 121, where

the action was to restrain the village from constructing a drain upon the land of the plaintiff, taken by proceedings for the condemnation of the same, as prescribed by secs. 895–904, 927. See *Lathrop v. Racine,* 119 Wis. 461, 97 N. W. 192, 194. There are other sections of the statutes authorizing the superintendent of highways to enter upon any lands adjoining to or near the highway in his district, and construct such drains or ditches as may be necessary for the improvement or preservation of such highways. Sec. 1236, and other sections of ch. 52, Stats. 1898. Such construction of drains has been regarded by this court as the taking of private property for public use, within the meaning of the constitution, and hence requiring compensation therefor to be made. Sec. 13, art. I, Const.; *Smeaton v. Martin,* 57 Wis. 364, 15 N. W. 403, and cases there cited; *Smith v. Gould,* 59 Wis. 631, 18 N. W. 457; *S. C.* 61 Wis. 31, 20 N. W. 369 The section of the statute in question manifestly requires the filing of notice of *lis pendens* whenever lands are taken for public use by proceedings such as it defines, namely, upon application to such boards as it specifies; but for the reasons stated above it has no application here, for this proceeding was not had before any such tribunal.

Another question discussed more particularly on the oral argument was the constitutionality of this proceeding, called forth by the contention of the respondent's counsel that this was not a taking under the power of eminent domain, because the construction of the drain was for a merely private use. Such contention is undoubtedly based upon certain statements contained in the opinion of Mr. Justice Orton in the case of *Donnelly v. Decker,* 58 Wis. 461, 468, 17 N. W. 389, 391. It is there, among other things, said, in effect, "that such ditching and draining are for no public use whatever in the legal meaning of the term;" that "the primary object is solely to restore such lands to a proper condition for tillage and agriculture by the several owners, and for

their use alone. . . . This is the only object which concerns their use, and that use is strictly private;" that "there is a sovereign power in the state, to be exercised by the legislature, which is outside, and in a sense above, the constitution, called the *police* power of the state." Such statements are manifestly repugnant to other portions of the same opinion. For instance, the opinion quotes a portion of the statute wherein it is, in effect, declared that the supervisors are only authorized to lay out and establish such ditch or drain "if in their judgment such ditch, drain, or enlargement is demanded by or will conduce to the *public health or welfare.*" Sec. 1359, Stats. 1898. So it is said in the opinion: "This legislation may readily be referred to this power by providing for the *public health.*" The authorities cited in the opinion do not justify the statement that such use is private and for the sole benefit of the landowners. In speaking of that case it was said by COLE, C. J., that "the majority of the court rested the authority to enact such a law upon the police power *to protect the public health and welfare.*" *Bryant v. Robbins,* 70 Wis. 269, 35 N. W. 545. In a later case he said:

"The declared purpose of the law in question is to promote the public health and welfare by executing a system of drainage. That is the main purpose and object of the law." *State ex rel. Baltzell v. Stewart,* 74 Wis. 620, 626, 43 N. W. 947.

Under the same section of the statute, and in an opinion by LYON, C. J., it was held by this court that:

"The town supervisors, before proceeding to lay out and establish a ditch, must determine that in their judgment it is demanded by, or will conduce to, the public health or welfare. Such a determination is essential to their jurisdiction, and unless it appears on the face of their proceedings their order laying out and establishing the ditch is void." *State ex rel. Witte v. Curtis,* 86 Wis. 140, 56 N. W. 475.

In the case at bar the supervisors met pursuant to notice ten days before the time fixed for laying out such drain, and

did then and there proceed to examine the location where it was proposed to construct such ditch and the enlargement thereof, and did hear any and all reasons offered for or against the laying out and construction thereof, and declared that in their judgment such enlargement of the ditch was demanded by, or would conduce to, the public health or welfare, and thereupon did decide to lay out and establish the same. The marsh to be so drained was upon the lands of the plaintiff and the three other parties referred to, and the drain was constructed on that marsh.

What has been said about the case of *Donnelly v. Decker, supra,* is not by way of criticising the *decision* in that case, but merely to correct certain misleading remarks of the learned justice who wrote the opinion in that case. In that case he quotes from Cooley this language:

"Similar considerations apply in the case of drainage laws, which are enacted in order to relieve swamps, marshes, and other low lands of the excessive waters which detract from their value for occupation and cultivation, and perhaps render them worthless for use, and are likely at the same time *to diffuse through the neighborhood a dangerous nuisance.* If these may be drained at the expense of the owner by special tax, there can be no doubt of the right of the state to make it his duty to drain them *as a matter of police regulation;* the state coming forward to perform the duty at his expense in case of its not being suitably or expeditiously performed." *Donnelly v. Decker,* 58 Wis. 470, 17 N. W. 389. See, also, 25 Am. & Eng. Ency. of Law (2d ed.) 1181, 1182.

Thus, in a late case in New York, where the defendant was required to provide "suitable appliances to receive and distribute a supply of water for domestic use" on the floors specified in two buildings belonging to the defendant, it was said by Judge PECKHAM, speaking for the court, that:

"Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional though no provision is made for compensation for such disturbances. They do not appropriate private prop-

erty for public use, but simply regulate its use and enjoyment by the owner. If he suffer injury, it is either *damnum absque injuria*, or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure." *Health Department v. Rector*, 145 N. Y. 32, 43, 39 N. E. 833, 836, citing, among other authorities, 1 Dillon, Mun. Corp. (4th ed.) § 141.

The police power in such cases is usually exerted merely to regulate the use and enjoyment of property by the owner. 22 Am. & Eng. Ency. of Law (2d ed.) 916; Lewis, Eminent Domain (2d ed.) § 187. It is said by the author in this last volume, and in the same section, that:

"A tract of land which requires drainage may be so situated that it can only be drained by a ditch through another tract which does not require it and would not be benefited by it. In such case certainly the drain could only be made under the power of eminent domain."

That is the same in principle as the cases above cited where drains or ditches are constructed upon adjoining lands to improve or preserve public highways.

In the case at bar the basis of the proceedings was the right to promote the public health and welfare. A public nuisance may always be abated. Its abatement may be beneficial to the owner of the land upon which it is situated; and such benefits may be assessed against the owner. The mere fact that such benefits may be assessed against the owner does not take the case out from under the police power and place it under the power of eminent domain. In this case it is quite unnecessary to decide whether the actual physical invasion of the plaintiff's land was a mere regulation of the use thereof to abate a public nuisance thereon, or whether it involved in addition a taking of some portion of the plaintiff's land as a means to abate a nuisance on the lands of others. Even if the latter be true, the proceeding prescribed by the

legislature and followed by the supervisors protects all his constitutional rights, for it awards him due compensation.

There can be no question as to the power of the state to "compel the filling or clearing and drainage of lands which might otherwise create malaria or other diseases." 22 Am. & Eng. Ency. of Law (2d ed.) 923, citing cases from this and other courts. So it is declared that:

"Special assessments founded on the special benefits incurred do not fall under the constitutional inhibition against taking private property for public use without just compensation." 25 Am. & Eng. Ency. of Law (2d ed.) 1172, citing cases from this and other courts.

Here it appears that June 4, 1900, the supervisors estimated the cost of such construction of the drain at $74.50, and October 17, 1900, they ascertained that amount to be insufficient to complete the work, which cost $19 in addition, making the total cost $93.50; and so they determined that the lands drained were proportionately benefited to the amount of such costs, and so assessed against the plaintiff and his lands, as benefits, $41.92, and against the other three parties $51.58, and also made such other parties pay the plaintiff $10 damages to a certain portion of his land. There is nothing in the case to indicate that such assessment against the plaintiff and his lands was in excess of the benefits actually received; and hence it is not objectionable on such ground. 25 Am. & Eng. Ency. of Law (2d ed.) 1172; *Lathrop v. Racine,* 119 Wis. 461, 97 N. W. 192, and cases there cited. Such additional assessment appears to have been authorized by the statutes. Secs. 1363, 1364, 1371. The trial court properly held that the $41.92 was rightfully assessed against and collected from the plaintiff, and hence that he had no cause of action to recover it back.

*By the Court.*—The judgment of the circuit court is affirmed.