CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, vs. LEMONWEIR RIVER DRAINAGE DISTRICT, Respondent.

*March 10—March 31, 1908.*

*Drains: Statutory provision: Damages.*

Pursuant to secs. 1379—11 to 1379—31, Stats. (1898), relating to the drainage of lands, commissioners were appointed who reported to the court upon the feasibility of draining certain lands through which the railroad of plaintiff ran, and included a list of all lands which would be damaged by the construction of the proposed improvement and awarded to plaintiff certain damages. On plaintiff's motion the report was modified by the court so that, instead of determining the damages to the railroad company's right of way, it postponed the determination thereof, and attempted to bind the drainage district for the expenses of changes in the railroad bridges and culverts then or thereafter made necessary by the construction of the drainage system. In an action by the railroad company to recover for expenses incurred in lengthening, constructing, and reconstructing several bridges along its road, made necessary by the drainage system, *held*, that the statute under which defendant exists and which prescribes the only mode of raising money with which to pay its obligations, clearly contemplates that the whole amount of damages must be ascertained and reported to the court before final order of confirmation of the report is made and initial assessment is. laid, and therefore the modification which sought to impose liability on the district for damages to be afterwards ascertained was void.

APPEAL from an order of the circuit court for Monroe county: J. J. FRUIT, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a demurrer to the complaint. The complaint averred the corporate existence of the plaintiff and its ownership of a railway, the corporate existence of the defendant as a drainage district, the institution of proceedings for the appointment of commissioners to examine and report upon the feasibility of draining certain lands through which the railroad of the plaintiff passed, and

the making of a report by the commissioners on December 12, 1902, including a list of all lands which would be damaged by the construction of the proposed drains and ditches, awarding $8 to the plaintiff for damages to part of its right of way passing through several described subdivisions of land, and the modification of said report at the instance of the plaintiff so as to read in part as follows:

"That no assessment shall be made for benefits on the right of way of the *Chicago, Milwaukee & St. Paul Railway Company* where said right of way passes through said district. That where said proposed ditches cross the said right of way the said ditches shall be protected to prevent washing of said right of way, and that any change to be made now or hereafter in the roadbed, bridges, or culverts of said railway company by reason of said ditches shall be made at the expense of the said drainage district."

The report thus amended was filed by the commissioners February 17, 1903. Thereafter on March 12, 1903, the circuit court confirmed the report as so modified and amended, and thereupon said defendant became organized as a drainage district under and by the name of the *Lemonweir River Drainage District.* Thereafter said defendant proceeded to construct a system of drainage and ditches, three of which crossed the right of way and roadbed of the plaintiff and gathered into straight, deep, and comparatively narrow channels the waters that always theretofore in times of freshet or flood had spread themselves over a large surface, and sent these waters in swift destructive torrents into the ditches, and so undermined the roadbed and tracks and abutments and supports of the bridges of the plaintiff making it necessary to lengthen, construct, and reconstruct the several bridges at an expense to the plaintiff of $1,789.98, which sum was demanded of the defendant and payment refused. The defendant demurred to the complaint as not stating facts sufficient to constitute a cause of action.

For the appellant there were briefs by *Graham & Graham,* and oral argument by *John G. Graham.*

Among other references upon the part of the appellant were the following: *McGinnis v. Knickerbocker Ice Co.* 112 Wis. 385, 88 N. W. 300; 7 Ency. Pl. & Pr. 471, 602, 694; *McCord v. Sylvester,* 32 Wis. 451; *Rusch v. M., L. S. & W. R. Co.* 54 Wis. 136, 11 N. W. 253; 6 Am. & Eng. Ency. of Law (1st ed.) 604; 15 Cyc. 982; *Younkin v. Milwaukee L., H. & T. Co.* 112 Wis. 15, 87 N. W. 861; *Davis v. La C. & M. R. Co.* 12 Wis. 16; *Pettibone v. La C. & M. R. Co.* 14 Wis. 443; sec. 19, ch. 419, Laws of 1905; *Akerly v. Vilas,* 25 Wis. 703; *Sentinel Co. v. Thomson,* 38 Wis. 489; *Roe v. Lincoln Co.* 56 Wis. 66, 13 N. W. 887; 23 Cyc. 1126, 1226.

For the respondent there was a brief by *Naylor & McCaul,* and oral argument by *W. R. McCaul.*

Among other references upon the part of the respondent were the following: *Lake Erie & W. R. Co. v. Smith,* 61 Fed. 885; *Donnelly v. Decker,* 58 Wis. 461, 17 N. W. 389; secs. 1379—11 to 1388a, Stats. (1898); *Valley L. Co. v. Hogan,* 85 Wis. 366, 55 N. W. 415.

TIMLIN, J.    The drainage district was organized under secs. 1379—11 to 1379—31, Stats. (1898), prior to the amendment of this law by ch. 419, Laws of 1905. A drainage district organized under that law is declared to be a body corporate with the right to sue and be sued and to have perpetual succession, the commissioners first appointed by the circuit court and their successors in office to constitute the corporate authorities of such drainage district and exercise the functions conferred upon them by law and do all things and perform all acts necessary to the construction and preservation of the proposed work. It is further expressly declared that all proceedings required by these sections prior to the entry of the order of confirmation shall be deemed and are declared to be necessary to the formation of said body cor-

porate.   Sec. 1379—18, Stats. (1898).   This drainage dis-
trict comes into existence substantially as follows: A petition
of a majority of the adult owners of land within the proposed
district is made to the circuit court asking for the appoint-
ment of commissioners for the execution of such proposed
work.   Notice of hearing of this petition is required, and
upon such initial hearing the landowners opposed to the
organization of the district have their day in court, but if
the court shall find that the petition has been signed as re-
quired by statute and that the proposed drain is necessary
or will be useful for the drainage of the lands in question,
and that the public health or welfare will be promoted by the
construction thereof, it shall appoint three competent persons
as commissioners to lay out and construct the work.   These
commissioners qualify as prescribed, proceed to examine the
lands described in the petition, and determine and report
to the court, among other things, the probable cost of the
proposed work, including all incidental expenses and the
costs of the proceeding, together with the probable cost of
keeping the work in repair after it is completed.   They also
determine and report what lands will be injured thereby and
the aggregate amount of such injuries, and award to each
tract, lot, easement, or interest by whomsoever held the
amount of damages so determined by them.   They also deter-
mine and report what lands will be benefited by the construc-
tion of the proposed work, whether the benefits will equal or
exceed the aggregate cost of constructing such work, includ-
ing all incidental expenses, costs of proceeding, and dam-
ages.   They are required to apportion and assess the esti-
mated cost of the improvement on the lands so benefited by
setting down opposite the correct description of each tract,
lot, easement, interest, or servitude the portion of such cost
assessed as benefits thereon.   If the costs, expenses, and dam-
ages are more than equal to the benefits that will be bestowed
upon the lands to be benefited, the proceedings shall be dis-

missed at the cost of the petitioners. Upon this report the court may change any plan of the drain or district proposed by the commissioners. Upon the hearing upon this report any owner of lands or person affected by the work proposed may appear and remonstrate against the whole or any part of the proposed work or object to the amount of his assessment, or that other lands should be assessed which are not assessed, or claim that the boundaries of the district should be altered so as to include or exclude certain lands, and may make other objections. All these issues shall be tried by the court. If the finding be in favor of the validity of the proceedings the court shall confirm the same, and the order of confirmation shall be final and conclusive. The proposed work shall be established and authorized, and the proposed assessments approved, subject to the right of appeal to the supreme court. The assessment so made separately to each tract is a lien on that tract. If the assessments are not paid the commissioners certify the same to the town clerk of the town in which the delinquent lands are situated, and such clerk enters the same in the next tax list for such town and they are collected in the same manner as state, county, and town taxes are collected, except that the personal property of the individual is not liable to seizure or sale therefor. If in the first assessment the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction or repair, a further assessment on the lands benefited proportioned on the first may be made under the order of the court or presiding judge thereof, to be collected in the same manner as the original assessment. All damages allowed to the owners of property shall be paid or tendered before the commissioners shall be authorized to enter upon lands for the construction of any work proposed thereon.

It must be manifest from these provisions that the corporation defendant is a public corporation of very limited corporate power. As a corporation it is brought into existence

and continued in existence without property or capital for the purpose of carrying on a public governmental function. It does not select its own officers, but they are appointees of the court. Aside from a special provision authorizing it to borrow money, it incurs contractual liability only as provided in these statutes, and it has only one mode of raising money wherewith to pay its obligations and that is by assessment of benefits.

In *Stone v. Little Yellow D. Dist.* 118 Wis. 388, 95 N. W. 405, it was decided that the order creating the district is the final determination in a judicial proceeding, and that errors not going to the jurisdiction of the tribunal must be corrected upon appeal from that order. It was also said that the statutes in question were in a very large measure adopted from the statutes of Illinois on the subject of drainage.

It must be manifest from the requirement that the proceeding shall be dismissed in the first instance if the costs, expenses, and damages are more than equal to the benefits that will be bestowed on the land to be benefited, and from other provisions of this drainage act in question, that the whole basis of liability of lands within the drainage district is benefits conferred upon such lands. It was held in *Hosmer v. Hunt D. Dist.* 135 Ill. 51, 26 N. E. 587, under quite a similar statute, that whether only one or several assessments are made the total assessments cannot exceed the benefits to the land. In *Winkelmann v. Moredock & Ivy L. D. Dist.* 170 Ill. 37, 48 N. E. 715, it was held that the drainage commissioners could not create an indebtedness in advance of the assessments or to pay outstanding obligations of the district or for any other purpose than those specified by statute, and that the aggregate amount of all assessments, where two or more are made, cannot exceed the benefits. In *Lathrop v. Racine,* 119 Wis. 461, 97 N. W. 192, it was held that special assessments for a public purpose laid without reference to benefits are invalid and statutes authorizing the same uncon-

stitutional, because a taking of property for public use without just compensation. *Rude v. St. Marie,* 121 Wis. 634, 99 N. W. 460, upholds the power to construct ditches conferred upon supervisors, on the ground that it is not merely for private uses, but to promote the public health and welfare, and special assessments therefor founded on special benefits conferred do not constitute a taking of private property for public use without just compensation. In *Ahrens v. Minnie Creek D. Dist.* 170 Ill. 262, 48 N. E. 971, it was held that drainage commissioners have no power to create in advance an indebtedness for completing the improvements and then levy an assessment to meet it, in a case where the commissioners had advanced their own money to complete the work after the original assessment was exhausted. *Teegarden v. Racine,* 56 Wis. 545; *Lake Erie & W. R. Co. v. Smith,* 61 Fed. 885; *Jones v. Gable,* 150 Mich. 30, 113 N. W. 577; and *People ex rel. Barber v. Chapman,* 128 Ill. 496, 21 N. E. 507, are authorities for the proposition that the order confirming the report of commissioners cannot be collaterally attacked, but that the aggrieved party must pursue the remedy by appeal given by the statute. In *Elmore v. Drainage Comm'rs,* 32 Ill. App. 122, it was ruled that the drainage district is not liable for the negligent acts of the commissioners, although such acts result in damage to private property, because its officers are designated by law, not elected by the inhabitants of the district, nor in any way responsible to the latter for their conduct.

The complaint in the case at bar is silent on the question of benefits. How much were the total benefits to the lands included in the drainage district, how much of this amount has been already collected by assessment, or how much expended for damages, expenses, and costs, we do not know. To hold the drainage district now liable for the amount claimed in the complaint might, if the judgment were enforced against the lands in the drainage district, conflict

with the requirement that these lands can only be obliged to pay up to the amount of benefits received. To tax these lands farther would be to contravene the statute and perhaps the constitution. But again, the drainage district as a corporation does not own these lands. It has no property and no funds except those derived from assessments. If, notwithstanding the silence of the pleading, there should be in fact some power to make a further assessment because the benefits are not yet exhausted by assessment, such assessment must be necessarily different upon different tracts of land in the drainage district. One tract of land may be benefited to the amount of $1 and another tract to the amount .of $100 and so on. The amount which each tract should pay can be ascertained only after the total amount of legal or assessable liability is ascertained, and after the commissioners, who have the only authority for assessment, in the first instance at least, have ascertained and scheduled the various benefits to the different tracts. This cannot be done by piecemeal. It must be in its essential nature an entirety. That is, all the assessable obligations outstanding, including that of the plaintiff, if it has one, must be taken together. By sec. 1379—24, Stats. (1898), it is provided that if in the first assessment the commissioners shall have reported to the court a smaller sum than is needed to complete the work of construction or repair, a further assessment on the lands benefited, proportioned on the first, may be made under the order of the court or presiding judge thereof without notice. This seems to authorize a second assessment to be made only for the purpose of completing the work of construction or repair. It may be that in a proper case arising under this section the commissioners might by order in the drainage proceeding, or by some other appropriate remedy, be compelled to make a further assessment for such specified purposes, provided the lands in the drainage district had not already paid up to the amount of the benefits received. But

the demand pleaded is not of the kind described in sec. 1379—24. The section is referred to here in connection with sec. 1379—26, Stats. (1898), to show that *damages* caused by the improvement must be all reported to the court and collected in the first assessment. Otherwise the court could not ascertain at the time when it is required by statute to do so whether or not the costs, expenses, and damages will be more than equal to the benefits that will be bestowed upon the land. By the complaint in the case at bar it would appear that at the instance of the plaintiff the report of the commissioners was amended as hereinbefore noticed. This stipulation and this portion of the report and order of confirmation were unauthorized by statute, contrary to the spirit and intent of the drainage law, and of no legal force whether embodied in the final order or not. It did have, however, the effect of a failure or omission on the part of the plaintiff to prove or present, or have estimated or awarded, its claims for damages in the drainage proceeding over and above the sum in said report awarded, if any. If it could be held that this provision of the order had any force or legal validity, any owner of land to be affected by the improvement in the drainage district could so procure the postponement of the ascertainment of his damages until after the improvement was completed and thus defeat the whole scheme of the drainage act and the express provisions of the statute. All damages allowed to the owners of property shall be paid or tendered before the commissioners shall be authorized to enter upon the lands for the construction of any work proposed thereon. Sec. 1379, Stats. (1898). This, together with the other statutory requirements hereinbefore referred to, clearly contemplates that the whole amount of damages must be ascertained and reported to the court before the final order of confirmation of the report is made and the initial assessment is laid. Neither the commissioners nor the court have the power to disregard the express provisions of the statute,

and, as we understand the complaint, there was, with the consent or procurement of the plaintiff, embodied in the report and approved by the court a provision which, instead of insisting upon plaintiff's damages, postponed the ascertainment of the same and attempted to bind the drainage district for all changes then or thereafter to be made in the roadbed, bridges, or culverts of the plaintiff. Under the law in force at that time this could not be done. The plaintiff has, however, elected to affirm rather than deny the corporate existence of the drainage district. The entry of the commissioners upon plaintiff's property was permissive and the law gave them power to enter. *Milwaukee & N. R. Co. v. Strange,* 63 Wis. 178, 23 N. W. 432. Whether the plaintiff, by motion in the drainage proceedings or otherwise, and upon showing that there are ascertained but uncollected benefits and the total amount of outstanding unpaid assessable demands, could have any relief under secs. 19–21, ch. 419, Laws of 1905 (Stats.: Supp. 1906, secs. 1379—29 to 1379—31), we need not here determine. The complaint states no cause of action against the drainage district. It follows that the order of the circuit court should be affirmed.

*By the Court.*—The order is affirmed.